IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL BRAY, et al.,

    Plaintiffs,

vs.

Civil Action No. 2:10-cv-054
Judge Sargus
Magistrate Judge Kemp

PLANNED PARENTHOOD
COLUMBIA WILLAMETTE, INC., et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants Chris Riley, Joel Kimmet, and the United States of America's Motion to Dismiss. (Doc. 31.) For the reasons that follow, the motion is **GRANTED**.

I.

Plaintiffs Michael and Jayne Bray, their six minor children, and their children Epiphany Bray, Beseda Bray, and Perseverance Bray (collectively "Plaintiffs") bring the instant action claiming violations of their constitutional rights and Ohio law against Defendants Planned Parenthood of the Columbia/Willamette, Inc. ("Planned Parenthood"), the law firm Squire, Sanders and Dempsey L.L.P. ("Squire, Sanders and Dempsey"), Deputy United States Marshals Joel Kimmet, Micah Stevenson, and Chris Riley ("U.S. Marshal Defendants"), and ten unidentified parties. The events giving rise to this suit occurred on October 1, 2007, when the U.S. Marshal Defendants, attorneys from Squire, Sanders and Dempsey, an agent from the

Bureau of Alcohol, Tobacco, and Firearms, at least two Clinton County sheriff deputies, and others entered the home of Michael and Jayne Bray in Wilmington, Ohio to seize property belonging to the Brays pursuant to a writ of execution issued by this Court. (*See* Am. Compl. ¶ 1.) The writ had been issued to enforce a judgment of approximately $850,000 obtained against Michael Bray by Planned Parenthood in an action in the United States District Court for the District of Oregon. (Am. Compl. ¶¶ 4.4–4.6.) Squire, Sanders and Dempsey provided legal representation to Planned Parenthood in obtaining the writ of execution.

Plaintiffs allege that, prior to carrying out the writ of execution, the U.S. Marshal Defendants and Squire, Sanders and Dempsey, acting as an agent of its client, Planned Parenthood, conspired to violate Plaintiffs' rights. (Am. Compl. ¶ 4.16.) Plaintiffs specifically allege that in carrying out the writ, the U.S. Marshal Defendants and the Squire, Sanders and Dempsey attorneys illegally ordered Michael Bray to remain on the sofa in the front room of the residence; prevented Plaintiffs from contacting their legal counsel; closely monitored and limited the family's freedom of movement; wrongfully videotaped the inside of Plaintiffs' home; wrongfully told Plaintiffs that they would be forced to vacate their home; wrongfully searched Plaintiffs' entire home; exceeded the scope of the writ by searching all of Plaintiffs' papers and effects; allowed multiple strangers access to Plaintiffs' property; and removed property from Plaintiffs' home that was not subject to the writ. (*See* Am. Compl. ¶¶ 4.11, 4.16.)

Plaintiffs initially brought this action in the Court of Common Pleas of Clinton County, Ohio. Defendants Riley and Kimmet then removed the action to the Western Division of this Court pursuant to 28 U.S.C. § 1442. (Doc. 1.) The case was then transferred to this, the Eastern Division of this Court, pursuant to the joint motion of Squire, Sanders and Dempsey and Planned

2

Parenthood. (*See* Doc. 21.) On December 15, 2009, Plaintiffs filed an amended complaint with five causes of action against Defendants. These include a claim for the unreasonable seizure of Michael Bray in violation of the Fourth and Fourteenth Amendments; a claim for the deprivation of Michael Bray's liberty without due process of law in violation of the Fifth and Fourteenth amendments; a claim for an unreasonable search of the Bray home in violation of the Fourth and Fourteenth Amendments; a claim for the violation of Plaintiffs' right to privacy in violation of the Fourth and Fourteenth Amendments; and a claim for the tort of conversion of property. (Am. Compl. ¶¶ 5.1–9.4.) Plaintiffs' constitutional claims against the U.S. Marshal Defendants are brought pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The claim for conversion arises under Ohio law.

By opinion and order dated September 14, 2010, the Court dismissed Plaintiff's constitutional claims (causes of action one through four) against Squire, Sanders and Dempsey and Planned Parenthood. Kimmet, Riley, and the United States of America[1] now move to dismiss the causes of action against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.

Rule 12(b)(6) requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss,

---

[1] Defendant Micah Stevenson is apparently no longer employed by the Marshals Service, and has not been served with process in this action. However, the Court's holding that all claims against Riley and Kimmet should be dismissed is equally applicable to Stevenson. Further, as to the fifth cause of action of the amended complaint, the United States of America asserts that it should be substituted as a party for Kimmet and Riley pursuant to 28 U.S.C. § 2679(d)(1).

3

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### III.

Kimmet and Riley contend that Plaintiff's constitutional claims should be dismissed under the doctrine of absolute quasi-judicial immunity, or, in the alternative, qualified immunity. Kimmet and Riley further assert that the special factors doctrine necessitates dismissal of causes of actions three and four. Finally, Kimmet, Riley, and the United States contend that the fifth cause of action should be dismissed because Plaintiffs have not complied with the requirements of the Federal Tort Claims Act.

### A.

Turning first to Plaintiffs' constitutional claims, the Court concludes that, on the facts alleged in the amended complaint, these claims are barred by the doctrines of absolute quasi-judicial immunity and qualified immunity.

Judges are ordinarily entitled to absolute immunity from suits for money damages for actions taken in their judicial capacity. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Further, "absolute judicial immunity has been extended to non-judicial officers who perform 'quasi-judicial' duties." *Id.* "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the

4

judicial officer who is immune." *Id.* In determining whether absolute immunity should be extended to an official, the inquiry focuses on the nature of the function performed by the official and not the identify of the official. *Id.* Thus, absolute quasi-judicial immunity has been held to extend to officials "enforcing or executing a court order" because such an action "is intrinsically associated with a judicial proceeding." *Id. See also Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986) ("It is difficult to think of a task more intimately related to a judicial proceeding than that of enforcing a money judgment entered by a court.") However, quasi-judicial immunity for an official executing a court order only extends to actions taken within the scope of the order being executed. *See Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000). *See also Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001) ("the law enforcement officer's fidelity to the specific orders of the judge marks the boundary for labeling the act 'quasi-judicial'").

Plaintiffs do not dispute the validity of the writ of execution itself and two other orders associated with it. Rather, they contend that they have sufficiently alleged that Riley and Kimmet exceeded the scope of the writ in carrying it out. In deciding a motion to dismiss pursuant to Rule 12(b)(6), a Court may take judicial notice of public records without converting the motion into one for summary judgment. *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (abrogated on other grounds by *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784 (2010)). Accordingly, the Court may examine the relevant orders. The writ of execution was issued on August 17, 2006, and provided, in part, as follows:

> This writ is for the seizure of the following real and personal property located at the following address:

5

1. All real property located at 308 High Street, Wilmington, OH 45177;
2. A Compaq desktop computer in Defendant's bedroom, along with a modem or other data transmission device, a Hewlett Packard scanner, a Hewlett Packard printer, and a facsimile machine;
3. A desktop computer located in Defendant's study, along with a data transmission device (modem) and all other associated equipment;
4. Each and every other computer, printer, scanner, data transmission device, and all other home office equipment;
5. An RCA-type of camcorder located in the library area of the Defendant's residence, along with any other camera or camcorder located in the library area:
6. Two or more cameras located in the Defendant's bedroom, one digital and one thirty-five millimeter;
7. Any other cameras or video recording devices located in the residence;
8. All books located in the Defendant's library and throughout the remainder of the house, with the exception of children's entertainment and educational books and bibles. These books should include any and all copies of materials written by the Defendant, both in published and unpublished form;
9. All VCR and DVD video equipment located throughout the residence, along with all televisions located throughout the residence; and
10. All stereo equipment located throughout the residence, including both shelf and portable models.

THEREFORE, YOU ARE COMMANDED to sell the above-described property of Defendant Michael Bray after giving the public notice of the time and place of the sale as required by law. You are further commanded to make out of any other property of Defendant Michael Bray subject to execution the costs of suit and the costs of executing this writ.

You shall execute this writ according to its terms and according to law.

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, Case No. 2:05-mc-002, Doc. 43 (S.D. Ohio, Aug. 17, 2006).

On September 7, 2006, the Court ordered the United States Marshal to "seize the property identified in the Writ" and authorized the Marshal to "enter upon the premises described in the Writ of Execution" to seize the property. *Id.* Doc.44. The Court's September 7th order also provided that "[u]ntil the actual sale of the real estate occurs, the real property will not be

damaged, impaired, or diminished in value by the acts or omissions of any person" and required a representative of Planned Parenthood to assist in the seizure if requested by the Marshals. *Id.* Execution of the writ was subsequently delayed by further litigation, and, on July 20, 2007, the Court issued an order reactivating the writ, and again commanding the Marshal to seize the property described therein. *See id.* Doc. 52.

The Court must now consider whether the amended complaint contains sufficient allegations that Riley and Kimmet acted outside the scope of these orders in carrying them out. While the introductory paragraph of the amended complaint states that Plaintiffs' claims "are predicated on actions by the Defendants that *exceeded* the scope of the applicable writ(s) and court orders," (Am. Compl. ¶ 1), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiffs' amended complaint alleges that Riley and Kimmet's order that Michael Bray remain on the sofa during the execution violated Bray's fourth and fifth amendment rights. (*See* Am. Compl. ¶¶ 5.1–6.2.) The amended complaint also alleges that the manner in which their property was seized violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures and a Fourth Amendment right to privacy. (*See* Am. Compl. ¶¶ 7.1–8.2.) However, as correctly noted by Kimmet and Riley, Plaintiffs' fourth cause of action, alleging a violation of a Fourth Amendment privacy interest, is redundant to Plaintiffs' third cause of action. *See, e.g., Katz v. United States*, 389 U.S. 347, 350 (1967) ("the Fourth Amendment cannot be translated into a general constitutional 'right to privacy'"). Accordingly, the Court considers the third and fourth causes of action to identically state claims for unreasonable searches and seizures.

7

Plaintiffs contend that Defendants exceeded the scope of the writ of execution and the Court's other orders in that they were not expressly authorized to prevent Michael Bray from moving freely around the house, videotape the house, search every room in the home, remove items not covered by the writ, allow more than one representative of Planned Parenthood to be present, allow strangers to roam freely around the home, and inspect the family's private papers and photos. As explained below, each of these alleged actions was either expressly or implicitly authorized by the writ and the Court's other orders.

In essence, a writ of execution issued by a federal court is an exercise of force by the federal government against an individual's property. Implicit within the authority vested in the Marshals by a duly authorized writ of execution is the authority to exercise a degree of control over both the property being seized, the location wherein the property is located, and, by extension, those present at the location. Also implicit is the authority to ensure that the property being seized is not damaged or destroyed, and the authority to take reasonable steps to ensure the safety of those tasked with seizing the property. Accordingly, the temporary restraint of Michael Bray, as alleged in the amended complaint, in no way exceeded the scope of Riley and Kimmet's authority pursuant to the writ of execution and the other orders pertaining thereto. Rather, the restraint of Bray served reasonable and legitimate safety and operational concerns ancillary to the seizure of property authorized by the writ. As the first and second causes of action deal exclusively with the restrictions placed on Bray during the seizure of property, those causes of action are barred as to Riley and Kimmet by the doctrine of quasi-judicial immunity.

Turning to the third and redundant fourth cause of action, and the allegations that Kimmet and Riley exceeded the scope of the writ through videotaping the house, searching through the

8

family's papers, allowing strangers to roam freely around the home, allowing more than one representative of Planned Parenthood to take part in the execution, and searching every room of the house, the Court concludes that each of these activities was either directly or implicitly authorized by the writ and the Court's other orders. As to the searches through every room and of the family's papers, while the writ did expressly require seizure of specific objects in specific rooms, it also included more general commands. For instance, the writ expressly commanded the Marshal to seize, *inter alia*, "[e]ach and every other computer, printer, scanner, data transmission device, and all other home office equipment;" "[a]ny other cameras or video recording devices located in the residence;" "[a]ll books located in the Defendant's library and throughout the remainder of the house, includ[ing] any and all copies of materials written by the Defendant, both in published and unpublished form;" "[a]ll VCR and DVD video equipment located throughout the residence, along with all televisions located throughout the residence;" and "[a]ll stereo equipment located throughout the residence, including both shelf and portable models." These more general commands clearly gave Kimmet and Riley the authority to search through Plaintiffs' home to locate items potentially covered by the writ. Relatedly, it is beyond question that, in order to identity and seize Michael Bray's writings, Riley and Kimmet were required to carefully examine the family's papers so that the writings could be identified.

The videotaping of the residence also was implicitly authorized by the Court's September 7, 2006 order, which forbade anyone from destroying or damaging the home until it could be sold. Thus, it was permissible and reasonable for the Defendants to videotape the home so as to have a record of the home's condition. (*See* Am. Compl. ¶ 4.13.) Further, the fact that other law enforcement officials may have been allowed inside the Bray home to assist in executing the

9

writ is of no consequence as authority to use sufficient resources to efficiently carry out the writ is also implicit. In this regard, the writ calls for the seizure of a potentially significant amount of property, which would require the assistance of many individuals to efficiently accomplish. Finally, as to the contention that Riley and Kimmet violated the Court's orders by allowing more than one representative of Planned Parenthood to be present, Plaintiffs misconstrue the Court's order of September 7, 2006. This order states that "[i]f requested by the United States Marshal's Service, a representative from the plaintiff shall be present in the identification of property subject to seizure." *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, Case No. 2:05-mc-002, Doc. 44 (S.D. Ohio, Aug. 17, 2006). On its face, this language does not expressly limit Planned Parenthood to one representative, but instead orders Planned Parenthood to be present if requested by the Marshal. As stated above, implicit in the authority granted to carry out the property seizure is the authority to carry out the operation with necessary resources. Thus, permitting more than one representative of Planned Parenthood to be present did not exceed the scope of the order.

Plaintiffs' remaining contention, that the writ was exceeded when Riley and Kimmet seized property not specifically included in the writ, also fails to allege conduct that is outside the scope of the writ. The sole allegation in the amended complaint related to property not covered by the writ states "Defendants removed from the Bray home books that Mr. Bray used to educate his children on religion, history and other subjects." (Am. Compl. ¶ 4.15.) However, Plaintiffs' contention that this statement sufficiently alleges conduct outside the scope of the writ of execution misconstrues the language of the writ itself. Pursuant to the writ, the Marshals were precluded from seizing "children's entertainment and educational books." *Planned Parenthood*

10

*of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, Case No. 2:05-mc-002, Doc. 43 (S.D. Ohio, Aug. 17, 2006). The amended complaint fails to allege that books authored specifically for children were among those seized.

Even if the seizure of books used by Michael Bray to educate his children were outside the scope of the writ of execution, the conduct of Riley and Kimmet would nevertheless be protected by the doctrine of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If qualified immunity is applicable, the official is not only immune from damages, but is immune from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (internal quotations omitted). The plaintiff in a civil action bears the burden of establishing that defendants are not entitled to qualified immunity, and must demonstrate that a constitutional right was violated and that the right was clearly established. *Id.* Here, even if the taking of property not covered by the writ could be considered a Fourth Amendment violation, the Court concludes that the discretion inherent in determining whether a particular book could be considered a children's book, and thus outside the scope of the writ, is exactly the type that is protected by qualified immunity.

**B.**

Kimmet, Riley and the United States move to dismiss Plaintiffs' claim for conversion on

11

the grounds that Plaintiffs have not complied with the requirements of the Federal Tort Claims Act ("FTCA"). The FTCA represents a waiver of sovereign immunity by the United States, which allows it to be liable for the torts of its employees committed within the scope of their employment. *See* 28 U.S.C. § 1346(b). Pursuant to the FTCA, if the Attorney General certifies that a federal employee against whom a tort action has been brought was acting within the scope of his or her employment when the alleged tort was committed, the United States is substituted as a party for the employee in the action. *See id.* § 2679(d). Here, the appropriate representative of the Attorney General has certified that Riley and Kimmet were acting within the scope of their employment at the time of the conduct alleged in the amended complaint. (*See* Doc. 31, Ex. 1.) Accordingly, the United States is substituted for Riley and Kimmet as a party to this action as to the fifth cause of action, and that cause of action is dismissed as to Riley and Kimmet.

The FTCA further provides that

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). Here, as Plaintiffs have not first brought their claim for conversion before the appropriate federal agency, this Court is without jurisdiction to consider that claim. Accordingly, the fifth cause of action is dismissed as to the United States.

## IV.

Based on the foregoing, Defendants Kimmet, Riley, and the United States of America's Motion to Dismiss (Doc. 31) is **GRANTED**. The United States is substituted as a Defendant as

12

to the fifth cause of action. All of Plaintiffs' claims as to Defendants Riley and Kimmet are **DISMISSED**. Finally, the fifth cause of action is **DISMISSED** as to Defendant the United States of America.

**IT IS SO ORDERED**

3-16-2011
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

13